## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| NATIONAL IRANIAN AMERICAN COUNCIL,<br>1629 K Street NW, #503<br>Washington, D.C. 20005<br><br>Plaintiff,<br><br>v.<br><br>UNITED STATES DEPARTMENT OF STATE,<br>The Executive Office<br>Office of the Legal Adviser<br>600 19th Street NW, Suite 5.600<br>Washington, D.C. 20522<br><br>Defendant. | Civil Action No. _1:18-cv-868_ |

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

1.      Plaintiff National Iranian American Council ("NIAC"), by and through its undersigned attorney, brings this action against Defendant U.S. Department of State to compel compliance with the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552.

2.      Specifically, Plaintiff seeks:

<u>Records created on or after March 1, 2017 concerning the U.S. Department of State's interpretation, enforcement, implementation and effects of the following, at all visa-issuing diplomatic and consular posts</u>:

   a.   May 4, 2017 State Department notice of request for emergency Office of Management and Budget (OMB) approval, OMB control number 1405-0226, DS-5535, docket number DOS-2017-0019 of "Supplemental Questions for Visa Applicants" policy

   b.   May 23, 2017 OMB approval of State Department May 4, 2017 request for emergency OMB approval of the "Supplemental Questions for Visa Applicants" policy proposal

   c.   March 10, 2017 internal cable sent from Secretary of State Rex Tillerson to visa-issuing posts entitled "Guidance to Visa-Issuing Posts"

d.  March 15, 2017 internal cable sent from Secretary of State Rex Tillerson to visa-issuing posts entitled "Implementing Immediate Heightened Screening and Vetting of Visa Applications"

e.  March 16, 2017 internal cable sent from Secretary of State Rex Tillerson to visa-issuing posts entitled "Halt Implementation"

f.  March 17, 2017 internal cable sent from Secretary of State Rex Tillerson to visa-issuing posts entitled "Implementing Immediate Heightened Screening and Vetting of Visa Applications"

<u>Records concerning the number of visa applicants who were subjected to the May 4, 2017 U.S. Department of State "Supplemental Questions for Visa Applicants" policy or required to submit form DS-5535, including</u>:

a.  Records concerning the total number and percentage of visa applicants from Iran, Iraq, Syria, Sudan, Libya, Somalia, and Yemen who were subjected to Security Advisory Opinions (SAO) screening

b.  Records concerning the total number and percentage of visa applicants from Iran, Iraq, Syria, Sudan, Libya, Somalia, and Yemen whose visa applications were rejected under the May 4, 2017 "Supplemental Questions for Visa Applicants" policy or form DS-5535, and whether such rejections where based on potential national security risks

c.  Records concerning the total number and percentage of visa applicants from Iran, Iraq, Syria, Sudan, Libya, Somalia, and Yemen who were requested by visa officials to provide travel history as well as supporting financial documentation evidencing the source of funds for all domestic and international travel for the past fifteen (15) years in accordance with the May 4, 2017 "Supplemental Questions for Visa Applicants" policy, or form DS-5535

d.  Records concerning the total number and percentage of visa applicants from Iran, Iraq, Syria, Sudan, Libya, Somalia, and Yemen who were requested by visa officials to provide social-media identifiers, platforms, pages, posting, passwords or other information pertaining to social media accounts held by the visa applicant, in accordance with the May 4, 2017 "Supplemental Questions for Visa Applicants" policy, or form DS-5535

e.  Records concerning any guidance, criterion, standards, benchmarks, or other canons utilized in evaluating visa-applicants' social media postings in assessing whether the individual poses a potential national security threat in accordance

with the Department of State's May 4, 2017 "Supplemental Questions for Visa Applicants" policy, or form DS-5535

f.  Records concerning the interpretation, implementation, and enforcement of the U.S. Department of State's May 4, 2017 "Supplemental Questions for Visa Applicants" policy, or form DS-5535

g.  Records concerning training or guidance provided to visa officers or other State Department officials concerning the enforcement of the May 4, 2017 "Supplemental Questions for Visa Applicants" policy, or form DS-5535

These categories of documents are hereinafter referred to as "the Requested Documents."

## JURISDICTION AND VENUE

3.     The Court has jurisdiction over this claim pursuant to 5 U.S.C. §§ 552(a)(4)(B) and 552(a)(6)(E)(iii).

4.     Venue is proper pursuant to 5 U.S.C. § 552(a)(4)(B).

## PARTIES

5.     Plaintiff National Iranian American Council ("NIAC") is a nonprofit, nonpartisan 501(c)(3) organization and is the largest organization representing Iranian Americans in the United States. NIAC's mission is to strengthen the voice of Iranian Americans by promoting greater understanding between the Iranian and American people, and seeks to advance the interests of the Iranian-American community on civic, cultural, and political issues. NIAC defends Iranian-American interests against corporate and media bias, discrimination, and government neglect; and monitors and shapes national legislation affecting Iranian Americans. NIAC is headquartered at 1629 K Street N.W., Suite #503, Washington, DC 20005.

6.     Defendant United States Department of State ("DoS") is a U.S. agency under 5 U.S.C. § 552(f)(1) and 5 U.S.C. § 551(1). DoS is located at 2201 C Street N.W., Washington D.C., and has custody and control over the Requested Documents.

## STATEMENT OF FACTS

## President Trump's Muslim Ban's, Extreme Vetting, and Form DS-5535

7.    On January 27, 2017 – in his first week as president – President Donald J. Trump signed an executive order entitled "Protecting the Nation From Foreign Terrorist Entry Into the United States," that among other restrictions, suspended the entry of individuals from seven Muslim-majority countries to enter the United States for a period of 90 days including Iran, Iraq, Libya, Somalia, Sudan, Syria, and Yemen.[1] Following impassioned protests across the country, lawyers representing affected individuals and families were able to secure injunctions in five federal courts within the following 24 hours.[2]

8.    On March 6, 2107, President Trump released a revised version of the executive order, which rescinded and replaced the first executive order ("Muslim Ban 2.0").[3] Even with its minor adjustments, removing the exception for Christians and preserving the rights of dual nationals from the respective countries, the travel ban continued to discriminatorily target nationals of Iranian and five other predominantly Muslim countries by imposing another travel ban and additional layers of scrutiny.

9.    As Muslim Ban 2.0 was challenged in court, the Administration turned its attention to achieving the underlying goals of the enjoined executive order through alternative administrative measures. More specifically, the Trump administration began implementing an 'extreme vetting' of visa applicants. Secretary of State Rex Tillerson sent a series of four internal cables to embassies and consulates offices overseas throughout the month of March.

10.    On March 10, Tillerson sent a cable entitled "Guidance to Visa-Issuing

---

[1] Exec. Order No. 13769, 82 Fed. Reg. 8977 (Feb. 1, 2017).
[2] *See, e.g.,* Steve Vladeck, *The Airport Cases: What Happened, and What's Next?*, JUST SECURITY, Jan. 30, 2017, *available at* https://www.justsecurity.org/36960/stock-weekends-district-court-orders-immigration-eo/.
[3] Exec. Order No. 13780, 82 Fed. Reg. 13209 (Mar. 9, 2017).

Posts" which provided instructions to visa-issuing posts on how to implement extreme vetting measures.[4]

11.     On March 15, 2017, Secretary Tillerson sent a second cable entitled "Implementing Immediate Heightened Screening and Vetting of Visa Applications."[5] That same day, the U.S. District Court for the District of Hawaii issued a nationwide temporary restraining order against the travel ban and refugee-suspension provisions of Muslim Ban 2.0.

12.     On March 16, 2017, the U.S. District Court for the District of Maryland issued a preliminary injunction against the travel ban. Secretary Tillerson sent a third cable entitled "Halt Implementation." [6]

13.     The following day, Secretary Tillerson sent a fourth cable entitled "Implementing Immediate Heightened Screening and Vetting of Visa Applications."[7] The fourth cable carefully removed and maneuvered around the sections from the March 15th cable that were unapproved by the White House Office of Management and Budget (OMB). The new instructions' vague language called for consular chiefs in their respective diplomatic posts to organize a group of legal and intelligence officials with the aim of developing "a list of criteria identifying sets of post applicant populations warranting increased scrutiny."

14.     On May 4, pursuant to Section 5 of Muslim Ban 2.0 Defendant U.S. Department of State Department published a Federal Register notice seeking emergency approval of its Supplemental Questions for Visa Applicants policy, utilizing a revised Form DS-5535, which would require visa applicants to provide: their travel history during the last fifteen years,

---

[4] *Guidance to Visa-Issuing Posts*, U.S. DEPARTMENT OF STATE (Mar. 23, 2017), *available at* http://live.reuters.com/Event/Live_US_Politics/791235253.
[5] *Implementing Immediate Heightened Screening and Vetting of Visa Applications*, U.S. DEPARTMENT OF STATE (Mar. 23, 2017), *available at* http://live.reuters.com/Event/Live_US_Politics/791246151.
[6] *Halt Implementation*, U.S. DEPARTMENT OF STATE (Mar. 23, 2017), *available at* http://live.reuters.com/Event/Live_US_Politics/791249837.
[7] *Supra* note 5.

including the source of funding for travel; address history, and employment history for the last

fifteen years; names and dates of birth for all siblings, children and current or former spouses or

civil or domestic partners; social medial platforms and identifiers used during the last five years;

among other things.[8]

15.     Although the request states that visa applicants will not be "denied on the basis of

race, religion, ethnicity, national origin, political views, genders or sexual orientation," it

explicitly states that the "information collection implements the directive of the President"

released on March 6, the same day Muslim Ban 2.0 was announced.

16.     The expedited emergency approval request deprived NIAC and the general public

of the opportunity to make fully informed public comments, May 18 was the last day to submit

public comments on the 'extreme vetting' proposal. On May 23 – five days later – the request

was approved by the OMB and Defendant U.S. Department of State began utilizing Form DS-

5535 to collect additional information from an unknown and unspecified subset of visa

applicants.

17.     Defendant U.S. Department of State did not identify any emergency

circumstances which would warrant emergency OMB approval, nor did it provide an explanation

for the nearly two-month gap between Muslim Ban 2.0 and the 'extreme vetting' policy

proposal.

18.     On August 3, 2017 Defendant U.S. Department of State published a Federal

Register notice inviting public comment on its planned request to extend the earlier May 23,

2017 emergency OMB approval of the Form DS-5535.[9]

---

[8] Dept. of State. Notice of Information Collection Under OMB Emergency Review: Supplemental Questions for
Visa Applicants. 82 Fed. Reg. 20956 (May 4, 2017).
[9] Dept. of State. Supplemental Questions for Visa Applicants. 82 Fed. Reg. 36180, 36181 (Aug. 3, 2017).

**Plaintiff's FOIA Request**

19.     On June 7, 2017, Plaintiff NIAC submitted a FOIA request ("the Request")[10] to

Defendant for 13 categories of records related to the Administration's implementation of the

'extreme vetting' policy and usage of Form DS-5535. Requestor/Plaintiff sought expedited

processing pursuant to 5 U.S.C. § 552(a)(6)(e) and a fee waiver.

20.     In a letter dated June 14, 2017, U.S. Department of State acknowledged that it had

received the Request on June 8, 2017 and granted Requestor's request for expedited processing

and fee waiver.[11]

21.     Defendant U.S. State Department's letter, however, did not indicate the scope or

nature of the documents it would produce or the exemptions it would claim, if any, with respect

to the FOIA request. Defendant U.S. Department of State also did not provide an estimated date

of production of the responsive records.

22.     Defendant's June 14, 2017 letter states only that "[w]e will notify you as soon as

soon as responsive material has been retrieved and reviewed."

23.     Nearly one month later, after hearing nothing further from Defendant, Requestors

contacted Defendant via email on July 5, 2017 to inquire about the "status of the request." On

July 11, 2017, Defendant responded via email that Requestors' email had been "forwarded to the

Branch Chief working on the case" and that "information will be provided to [Requestors] as it

becomes available." A copy of Defendant response is attached as **Exhibit C**.

24.     On July 24, 2017, after receiving no further communication from Defendant,

Requestors again contacted Defendant via email requesting information about when the Request

would be completed. On July 25, 2017, Defendant responded via email stating that the

---

[10] A copy of the Request is attached as Exhibit A.
[11] A copy of U.S. State Department's response is attached as Exhibit B.

"electronic records system indicates that [Requestors'] request is in queue for processing and has an estimated completion date (ECD) of June 2018." Defendant goes on to say that the ECD's are "subject to change and are 'strictly' estimates and not intended to be used as 'actual' dates of completion, due to various extenuating factors."[12]

25.     Requestors have heard nothing further from Defendant with respect to the FOIA Request since July 25, 2017.

26.     Defendant has yet to make available any records responsive to the Request and has failed to comply with the time limit provision of 5 U.S.C. § 552(a)(6).

27.     Because of Defendant's failure to comply with the FOIA time limit provision, Requestor has exhausted its administrative remedies under 5 U.S.C. § 552(a)(6)(C)(i).

**The Need for Expedited Production of Requested Documents**

28.     The Requested Documents are matters of intense public interest.

29.     Requestor asserted, and Defendant accepted as true by granting Requestor's request for expedited processing:

     a.  "[T]he requested records seek to inform the public about the State Department's interpretation, implementation, and enforcement of the State Department 'Supplemental Questions for Visa Applicants' policy with regard to nationals of Iran and other Muslim-majority countries amid numerous court orders, at least four internal memos from the Secretary of State to visa-issuing posts abroad, and other quickly developing events."

     b.  "[A]n 'extreme vetting' policy designed to undermine the judiciary and exploit an administrative backdoor to nevertheless drastically reduce the number of Iranians and Muslims entering the United States based on discriminatory grounds rather than bona fide threats to national security is a matter of great public interest."

     c.  "The requested information has a particular value which has the potential of being lost if not disseminated quickly because issues related to this policy are currently being investigated by media and are before the public."

---

[12] *A copy of the email exchanged between Plaintiff and Defendant are attached as Exhibit C.*

d. "[T]his request 'concerns a matter of current exigency to the American public' and the 'consequences of delaying a response would compromise a significant recognized interest' which 'concerns federal government activity.'"

30.    Expedition is also warranted due to the fast-approaching April 25, 2018 oral argument date before the U.S. Supreme Court regarding the constitutionality of President Trump's third attempt at a Muslim Ban, Presidential Proclamation 9645.

31.    The 'extreme vetting' policy, including the usage of Form DS-5535 for an unspecified subset of visa applicants, appears, on its face, to violate the constitutional guarantee that the government will not establish, favor, discriminate, or condemn any religion because it is directed at Muslim-majority countries and was put forth in the context of prior unconstitutional attempts to ban nationals of Muslim-majority countries. Additionally, Section 5 of the now defunct Muslim Ban 2.0 served as the impetus for putting forth the present 'extreme vetting' policy.

32.    Finally, the intense public interest regarding 'extreme vetting' is evidenced by articles published by, for example, The Washington Post, The New York Times, the Associated Press, Reuters, and The Los Angeles Times.

33.    For all of the foregoing reasons, an expedition in ordering the release of the Requested Documents is warranted.

<u>**COUNT I**</u>
<u>**(Violation of FOIA, 5 U.S.C. § 552, for**</u>
<u>**Failure to Provide a Determination Within**</u>
<u>**30 Business Days)**</u>

34.    Plaintiff repeats and re-alleges paragraphs 1 through 33 as if fully set forth herein.

35.    Pursuant to FOIA, 5 U.S.C. § 552(a)(6)(A)(i), Defendant U.S. Department of State had an obligation to determine

whether to comply with the Request within the proscribed 20-day time limit (excepting Saturdays, Sundays, and legal public holidays), and to "immediately notify" Requestor of the U.S. Department of State's determination and "reasons therefor."

36.    Under FOIA, 5 U.S.C. § 552(a)(6)(B)(i), an agency may extend the 20-day deadline to make a determination by an additional ten business days if "by written notice" it asserts that there are "unusual circumstances" and if it asserts "the date on which a determination is expected to be dispatched."

37.    Defendant U.S. Department of State did not request an extension by written notice and failed to toll its 20-day statutory deadline to make a determination, nor did it assert any "unusual circumstances."

38.    Accordingly, Plaintiff has exhausted its administrative remedies with respect to the Request under 5 U.S.C. § 552(a)(6)(C)(i).

39.    Defendant's failure to make a determination regarding whether to comply with the Requestor's request within the proscribed 20-day time limit violates 5 U.S.C. § 552(a)(6)(A),(B), and applicable regulations promulgated thereunder.

### COUNT II
### (Violation of FOIA, 5 U.S.C. § 552, for Failure to Make Records Available)

40.    Plaintiff repeats and re-alleges paragraphs 1 through 39 as if fully set forth herein.

41.    Plaintiff, and the public, has a right of access to the Requested Documents under FOIA, 5 U.S.C. § 552(a)(3)(A), and there is no legal basis for the Defendant to withhold them.

42.    Plaintiff is being harmed by reason of Defendant's unlawful withholding of the Requested Documents, and Plaintiff will continue to be harmed unless Defendant is compelled to conform its conduct to the requirements of the law.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff National Iranian American Council respectfully requests that

judgment be entered against Defendant United States Department of State and that this Court:

A. Declare that Defendant violated FOIA by failing to determine whether to comply with the Request within 20 business days and by failing to immediately thereafter notify Plaintiff of such determination and reasons therefor;

B. Declare that Defendant violated FOIA by unlawfully withholding the Requested Documents and compel Defendant to produce the Requested Documents expeditiously pursuant to 5 U.S.C. §§ 552(a)(4)(B), (6)(E);

C. Enjoin the Defendant from withholding the Requested Documents and order production of the Requested Documents to Plaintiff pursuant to 5 U.S.C. § 552(a)(4)(B) promptly and by a date certain;

D. Issue an order overruling any exemptions Defendant may assert and compelling Defendant to produce the Requested Documents in full, promptly, and by a date certain;

E. Award Plaintiff its reasonable litigation costs and attorneys' fees incurred pursuant to 5 U.S.C. § 552(a)(4)(E)(i); and

F. Grant such other and further relief as the Court may deem just and proper.

DATED this 12th day of April, 2018.

Respectfully submitted,

Shayan H. Modarres (D.C. Bar No. 1033819)
NATIONAL IRANIAN AMERICAN COUNCIL
1629 K Street N.W.
Suite #503
Washington, D.C. 20005
Telephone: (202) 386-6325

*Attorney for Plaintiff National Iranian American Council*